**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BARBARA WALLACE** | * | |
| 71 Richard Avenue | * | |
| Severn, Maryland 21114 | * | |
| | * | |
| **BAHRI LYNN WALLACE** | * | |
| 71 Richard Avenue | * | |
| Severn, Maryland 21114 | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No.: 1:18-cv-2539 |
| | * | |
| **COSTCO WHOLESALE CORPORATION** | * | |
| 999 Lake Drive | * | |
| Issaquah, Washington 98027 | * | |
| | * | |
| Defendant | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

**Count One – Racial Discrimination in Contract – 42 U.S.C. Sec. 1981**

1.     Plaintiffs, who are married to one another, are residents of Anne Arundel County, Maryland.

2.     Defendant Costco Wholesale Corporation (hereafter "Costco") is incorporated in the State of Washington, where it also maintains its principal place of business. It owns and operates two stores in the District of Columbia.

3.     Subject matter jurisdiction of this Court is founded under 28 U.S.C. Sec. 1331 (federal question) and Sec. 1332 (diversity of citizenship).

4.     Costco is a large commercial merchant that owns and operates numerous warehouse club stores throughout the United States. It offers memberships to the public that allow members to shop and purchase a wide array of goods and services in exchange for a membership fee.

1

5.      Plaintiffs are African-American who have the same rights to make and enforce contracts as white persons under 42 U.S.C. Sec. 1981. These rights include the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

6.      Since 2007, Plaintiffs ("the Wallaces") have been members of Costco. They regularly shopped and purchased goods and services at the Costco store located at 7077 Arundel Mills Circle in Hanover, Anne Arundel County, Maryland.

7.      On the evening of May 23, 2018, the Wallaces went to the Costco store at Arundel Mills to purchase a glass-door refrigerator. Upon entering the store, they exchanged pleasantries with the greeter, who was well known to them and then went to look for the refrigerator. They could not find one in stock. They needed one soon, so they decided to leave and go to another store in the hope of finding one. They started toward the exit, stopping briefly to look at television sets. As they exited the store, they said goodbye to the same checker who initially greeted them.

8.      The Wallaces were not aware that they had attracted the attention of warehouse employees during their visit to the store. An employee saw Mrs. Wallace from a distance and thought she resembled a woman who was suspected of shoplifting printer ink cartridges from the store four days earlier. That employee alerted a manager, and he called 911.

9.      In his call to 911, the manager reported to police that there was a "robbery in progress" at the store. He advised police that the robbers had been to the store before, that they had photographs of them, and that they had just robbed the Costco located in Glen Burnie an hour previous, where they assaulted a manager. He affirmatively represented that the suspects were presently stealing ink cartridges. He described the suspects as "three black males and a black female."

10.     The manager's report to 911 was false and misleading. At the time of the call, Costco had not been the victim of a robbery or a theft. No employee observed anyone commit a crime, and, in fact, no crime had been committed. The Wallaces were alone and were never in the company of two other individuals. They did not touch any ink cartridges and were never even in close proximity to the ink cartridge display.

11.     No employee stopped the Wallaces before they left the store. No employee tried to speak to them about their concerns.

12.     Mrs. Wallace did not resemble the suspected shoplifter, and no employee was ever in a position to make a responsible comparison between Mrs. Wallace and the suspected shoplifter. Moreover, employees were aware of additional details of the prior shoplifting incident which would have alerted a reasonable person in their position to the fact that Mrs. Wallace was likely not the suspected shoplifter. For example, the previous shoplifter was in the company of a young woman (thought to be her daughter), and not a man. Furthermore, the previous shoplifter left in a Toyota sedan, not a pickup truck, which the Wallaces were driving.

13.     Anne Arundel County police responded to the 911 call. One officer arrived at the store before the manager finished with his conversation with the 911 call taker. That officer obtained additional information from the store employees as other officers patrolled the area in search of the Wallaces.

14.     The officer at the store was able to determine that there had not been a robbery. He advised the other officers that there had been a possible shoplifting. He also provided the description and tag number of the Wallaces' vehicle, which had been pointed out by employees. The Wallaces vehicle was quickly located. The officer at the store requested that the car be

stopped, and the occupants identified and detained while he continued to obtain information from store employees.

15.     The Wallaces were driving on Arundel Mills Boulevard when they were stopped by police. The stop was conducted by three officers driving two marked vehicles and an unmarked vehicle. They activated their emergency equipment and initiated a stop. All three officers alighted from their cars and approached the Wallace's vehicle from both sides. It was clear to the Wallaces that they were not the subject of a routine traffic stop. Mrs. Wallace, in particular, was concerned that the police might misinterpret some movement or action by them and instructed her husband to refrain from reaching for his wallet to retrieve his identification. The Wallaces remained seated with their hands in view and opened their windows to give officers a clear view of them.

16.     The lead officer told the Wallaces that they were being stopped because an employee of Costco had reported that they shoplifted from the store. The Wallaces were in shock and disbelief. They emphatically denied stealing and invited officers to search their vehicle. Officers immediately recognized that the Wallaces were not likely to have been involved in any crime and reported that to the officer at the store. Officers then obtained the Wallace's identities and allowed them to go on their way.

17.     After the Wallaces were released, employees completed an inventory of printer cartridges and determined that no crime had been committed. They reported this fact to the officer on the scene, who advised his dispatcher that no crime had been committed.

18.     The Wallaces were upset at being falsely accused of shoplifting. They were also aware that they would be required by their employers to report their contact with police. They were concerned that they would have to answer questions about the incident posed by their

employers. In light of this, they returned to the Costco store to inquire why they had been reported to the police.

19. The Wallaces spoke with the manager who had called 911. He was rude and unapologetic. He advised the Wallaces that the store had a problem with persons stealing printer ink cartridges. When they inquired why they had been identified as shoplifters, the manager stated, "you fit the bill." He repeated this phrase as the Wallaces made a futile attempt to convince him of their innocence. The Wallaces expressed their dissatisfaction and left the store. They had a distinct feeling that they had been discriminated against on the basis of their race.

20. The primary cause of the faulty identification of Mrs. Wallce and the misguided belief that the Wallaces had committed a crime was racial stereotyping and bias. This is demonstrated, in part, by the manager's description to police, in which race was the only distinguishing feature provided. It is also demonstrated, in part, by his comments to the Wallaces, when he explained to them that he called the police on them because they "fit the bill." The use of this phrase was an indication of racial stereotyping because the Wallaces did not resemble the previously suspected shoplifters in any material distinguishing way other than race.

21. The actions of Costco's store manager were rash, reckless, and arbitrary, and motivated by a purpose to racially discriminate against the Wallaces. It is standard policy in the retail industry that a person is not arrested, detained or reported to the police unless he or she is observed concealing store property. Further, that person is carefully watched continuously to ensure that the right person is arrested or reported. When it came to the Wallaces, these policies were ignored, for the reasons stated previously.

22.     The Wallaces received services from Costco which were at odds with the way it treats white patrons. As a direct result of such discrimination, Costco deprived the Wallaces of the enjoyment of all the benefits and privileges of their contractual relationship.

23.     As a direct and proximate result of Costco's racially discriminatory interference with contractual interests, the Wallaces were detained by the police and accused of theft. They were humiliated and embarrassed, suffered emotional distress, their reputation and standing in their community were adversely affected, and they will incur the expense to expunge their police records.

24.     The actions of Costco's employees were committed within the scope of their employment for Costco.

**Count 2- False Imprisonment**

25.      Plaintiffs adopt by reference the allegations contained in paragraphs 1-14 with the same effect as if fully set forth here.

26.     The previously alleged accusation of robbery and theft made by one or more the employees of the Costco store at Arundel Mills caused the Wallaces to be detained by the police, without their consent, and deprived them of their lawful liberty, without legal justification. They suffered harm and damages as previously alleged.

WHEREFORE, Plaintiffs Barbara Wallace and Bahri Wallace demand judgment under each count against Defendant Costco Wholesale Corporation in an amount of $2,000,000 in compensatory damages and an additional amount of punitive damages sufficient to deter and punish the defendant's Costco's discriminatory and tortious conduct.

_____/s/_____
Terrell N. Roberts, III
ROBERTS & WOOD
*Attorney for Plaintiffs*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764


_____/s/_____
Christopher Griffiths, Esq.
ROBERTS & WOOD
*Attorney for Plaintiffs*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764


## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.


_____/s/_____
Terrell N. Roberts, III